UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

Gleen Wayne Stewart,                                          Case No.
     Plaintiff

     v.                                                    Hon.
                                                 District Court Judge

Anthony VandeVoorde, Joseph Bacigal,
Brandon Russell, Alina Harrington,
Jason Murdock, City of Lansing, a Michigan
Municipal corporation,
     Defendants.
_____/

Brendon Basiga P69369
Attorney for Plaintiff
909 N. Washington Ave.
Lansing, MI 48906
517-708-7830
brendon@basigalawfirm.com

J. Nicholas Bostic  P40653
Co-Counsel for Plaintiff
909 N. Washington Ave.
Lansing, MI 48906
517-706-0132
barristerbosticlaw@gmail.com
_____/

## **COMPLAINT AND JURY DEMAND**

Plaintiff, for his complaint, states:

1.  Plaintiff is a competent adult and a resident of Ingham County and the Western District of Michigan.

2.  Defendant Anthony VandeVoorde, at all times pertinent to this complaint, was a police officer for Defendant City of Lansing, Michigan.

3.  Defendant VandeVoorde's county of residence is unknown and his place of conducting business is Ingham County and the Western District of Michigan.

4.   Defendant Joseph Bacigal, at all times pertinent to this complaint was a police officer for Defendant City of Lansing, Michigan.

5.   Defendant Bacigal's county of residence is unknown and his place of conducting business is Ingham County and the Western District of Michigan.

6.   Defendant Brandon Russell at all times pertinent to this complaint was a police officer for Defendant City of Lansing, Michigan.

7.   Defendant Russell's county of residence is unknown and his place of conducting business is Ingham County and the Western District of Michigan.

8.   Defendant Alina Harrington at all times pertinent to this complaint was a police officer for Defendant City of Lansing, Michigan.

9.   Defendant Harrington's county of residence is unknown and her place of conducting business is Ingham County and the Western District of Michigan.

10. Defendant Jason Murdock at all times pertinent to this complaint was a police officer for Defendant City of Lansing, Michigan.

11. Defendant Murdock's county of residence is unknown and his place of conducting business is Ingham County and the Western District of Michigan.

12. Defendant City of Lansing is a municipal corporation organized under the laws of the State of Michigan and conducts its business in Ingham County, Michigan, in the Western District of Michigan.

13. This cause of action arose in the City of Lansing, Ingham County, Michigan, in the Western District of Michigan.

14. At all times relevant to this matter, all Defendants were acting under color of law.

15. This Court has jurisdiction pursuant to 28 USC §1331 as the claims are based on 42 USC §1983 and alleged violations of Plaintiff's federal constitutional rights.

## GENERAL ALLEGATIONS

16. Paragraphs 1 through 15 above are incorporated herein by reference.

17. On May 15, 2020 at approximately 12:30 a.m., Plaintiff was at his own home at 515 N. Martin Luther King, Jr. Boulevard, Lansing, Michigan.

18. A neighbor called the police falsely claiming that Plaintiff was being loud and making threats.

19. Defendants VandeVoorde and Bacigal responded and were standing in the yard talking to Plaintiff who was standing on the enclosed front porch of his dwelling.

20. Defendant Bacigal then falsely stated that Plaintiff had assaulted his sister who was standing near him.

21. Moments after Plaintiff had walked from the enclosed front porch to inside the dwelling itself, Defendants VandeVoorde, Bacigal, Murdock, and Russell entered the dwelling and physically grabbed Plaintiff.

22. Defendant Bacigal forcibly broke open the screened wooden door to the porch to make entry.

23. Defendants falsely claimed they were arresting Plaintiff for a purported assault and forcefully took him to the floor.

24. Defendants repeatedly struck Plaintiff and held onto his limbs and torso so he could not defend himself.

25. Plaintiff received blows to his neck and his ribs.

Page **3** of 17

26. Plaintiff's breathing was restricted by one or more Defendants who choked him.

27. Plaintiff's nose was bleeding and soaked his COVID-19 mask.

28. Defendants placed handcuffs on Plaintiff and locked him into the back of a police car.

29. Once at police headquarters, Plaintiff complained of injury and was taken to the hospital emergency room.

30. While at the emergency room, Defendant Harrington prepared a petition for a Person Requiring Treatment that contained false statements and misleading information to create false inferences and submitted it.

31. The Person Requiring Treatment petition was provided so the medical staff could give a "chemical restraint" to Plaintiff and treat Plaintiff without his consent.

32. Plaintiff arrived at the emergency room at approximately 1:14 a.m. and was discharged at approximately 9:39 a.m.

33. Plaintiff had difficulty breathing and chest pain and was placed on a respirator for a short period of time.

34. Plaintiff had a contusion on his hand.

35. Hospital staff noted multiple abrasions on Plaintiff.

36. Plaintiff's blood work returned with an elevated level of a protein that develops when blood clots break apart and is associated with pulmonary embolism.

37. Plaintiff's blood work returned with an elevated level of lactate most likely from having his breathing restricted while the Defendants had their weight on his back and due to wearing a COVID-19 mask after arrest.

38.  Plaintiff's urinalysis contained blood.

39. Plaintiff was falsely charged with resisting and obstructing an officer.

40. The charges against Plaintiff were dismissed at a preliminary examination where Defendants were unable to establish probable cause for the charges.

41. Between Plaintiff's arrest and the preliminary examination on September 17, 2020 Plaintiff was subjected to pretrial release conditions which required his appearance at court proceedings, limited his interstate travel, prohibited his contact with a family member and prohibited his presence at his own home.

**COUNT 1 – 42 U.S.C. §1983**
**Fourth Amendment – Excessive Force**

42. Paragraphs 1 through 41 above are incorporated herein by reference.

43. The Fourth Amendment of the U.S. Constitution protects against the use of excessive force in making an arrest.

44. Plaintiff was given no opportunity to comply with any verbal orders from the Defendants by the time they made physical contact with him.

45. Defendants had no authority to use any force on Plaintiff as they had no basis to arrest him.

46. Notwithstanding the lack of a basis for arrest, Defendants struck Plaintiff with their fists, knees, and unknown objects without cause.

47. Defendants were yelling at Plaintiff to put his arms behind his back while he was already on the floor but he was unable because at least two of the Defendants had their body weight on his back and his arms were under him.

48. Each Defendant was in a position to prevent the excessive force being applied by the other Defendants but failed to act.

49. No Defendant was acting in self-defense as Plaintiff made no physical gestures or threats to them and was unarmed.

50. The amount of force used by Defendants exceeded the force necessary to effectuate the arrest.

51. The conduct of Defendants was a direct and approximate cause of the physical injuries to Plaintiff described above.

52. Plaintiff suffered emotional harm in the form of extreme anxiety, nervousness, and worry when he sees or is near a police officer.

53. The conduct of Defendants was a direct and approximate cause of the violations of Plaintiff's Fourth Amendment rights to be free from excessive force.

54. The amount of force used by Defendants was unreasonable under the circumstances and a violation of Plaintiffs constitutional rights under the Fourth Amendment.

55. As of May 15, 2020, it was clearly established that the Fourth Amendment to the United States Constitution allows a police officer to use only that force that is reasonably necessary to effectuate an arrest in the course of an arrest.

56. As of May 15, 2020, it was clearly established that using more force than what is reasonably necessary to effectuate an arrest is a violation of the Fourth Amendment of the United States Constitution.

57. No reasonably trained or experienced police officer would have believed it necessary to take physical control of Plaintiff, take him to the floor, strike him, and handcuff him when he was not given an opportunity to comply.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of the

Plaintiff against Defendants in an amount of not less than $25,000.00 each.

## COUNT 2 - 42 USC § 1983
## Fourth Amendment-Failure to Prevent Excessive Force

58. Paragraphs 1 through 57 above are incorporated herein by reference.

59. Each Defendant was in a position to see and prevent the conduct of the other Defendants when applied excessive force was inflicted on Plaintiff.

60. As a sworn police officer, each Defendant had a duty to prevent a constitutional violation by other police officers and had the opportunity to prevent that conduct in this case.

61. The failure to prevent the other Defendants from using excessive force on Plaintiff was a violation of Plaintiff's right to be free from excessive force under the Fourth Amendment in the United States Constitution.

62. Each Defendant's failure to prevent the use of excessive force by the other Defendants is a violation of Plaintiffs rights to be free from excessive force under the Fourth Amendment in the United States Constitution.

63. Each Defendants failure to prevent the other Defendants' use of excessive force and/or entry into the home was a direct and approximate cause of the injuries to Plaintiff as described herein.

64. As of May 15, 2020, it was clearly established that failing to prevent another police officer from committing a constitutional violation if there is an opportunity to prevent it is a violation of the Fourth Amendment of the United States Constitution.

65. No reasonably trained and experienced police officer would have believed it lawful to fail to prevent the use of excessive force by the other Defendants under these circumstances.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of

the Plaintiff against Defendants in an amount of not less than $25,000.00 each.

### COUNT 3 – 42 USC § 1983
### Fourth Amendment – Invasion of Privacy

66. Paragraphs 1 through 65 above are incorporated herein by reference.

67. The Fourth Amendment of the United States Constitution protects against entry into dwellings without a warrant based on probable cause or a recognized exception to the warrant requirement.

68. Defendant Bacigal had no probable cause or other authority to enter Plaintiff's dwelling.

69. Defendant Bacigal pulled on the screened wooden door to the porch to the point that it was broken.

70. Once the screened wooden door was broken, it allowed entry by all four Defendants to the screened porch.

71. All four Defendants continued and entered the dwelling itself by crossing over the threshold of the front main door.

72. As of May 15, 2020, it was clearly established law that law enforcement officers may not enter a dwelling without probable cause or a recognized exception to the requirement for a warrant.

73. On or about May 15, 2020, no reasonably trained law enforcement officer would have believed that entering Plaintiff's dwelling was lawful.

74. The conduct of the Defendants caused Plaintiff to be deprived of his right to privacy in violation of the Fourth Amendment to the United States Constitution.

75. Plaintiff was damaged by the conduct of Defendants in that Plaintiff suffered stress, anxiety, embarrassment, humiliation, loss of privacy, and damage to his property.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of the Plaintiff against Defendants in an amount of not less than $25,000.00 each.

## COUNT 4 – 42 U.S.C. §1983
## FALSE ARREST

76. Paragraphs 1 through 75 above are incorporated herein by reference.

77. On May 15, 2020, Defendants Bacigal and VandeVoorde took physical control of Plaintiff inside Plaintiff's dwelling and took him to the floor.

78. Defendants Bacigal and VandeVoorde verbally told Plaintiff he was under arrest for domestic assault.

79. Defendants Bacigal and VandeVoorde forcibly controlled Plaintiff and put handcuffs on his writs behind his back.

80. Defendants Bacigal and VandeVoorde had no statutory authority to make an arrest because they did not witness a misdemeanor offense in their presence.

81. Defendants Bacigal and VandeVoorde did not have a warrant to arrest Plaintiff.

82. Defendants Bacigal and VandeVoorde did not have probable cause to believe that Plaintiff had committed any criminal offense.

83. The conduct of Defendants Bacigal and VandeVoorde on May 15, 2020 caused a violation of Plaintiff's Fourth Amendment right to not be deprived of his liberty except upon the basis of a warrant or probable cause to believe a crime had been committed.

84. As of May 15, 2020, it was clearly established that an arrest must be based on a judicially issued warrant or probable cause to believe a crime was committed.

85. As of May 15, 2020, no reasonably trained law enforcement officer would have believed that arresting Plaintiff would not be a violation of the United States Constitution.

86. Plaintiff was damaged by the conduct of Defendants Bacigal and VandeVoorde in that he suffered a loss of liberty, stress, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of the Plaintiff against Defendants in an amount of not less than $25,000.00 each.

### COUNT 5 – 42 U.S.C. §1983
### FALSE IMPRISONMENT

87. Paragraphs 1 through 86 above are incorporated herein by reference.

88. During Plaintiff's hospitalization, Plaintiff refused treatment repeatedly.

89. Taken in reasonable context, Plaintiff's statements were a result of the recent deaths in his family for which he was grieving, his false arrest, and the beatings he had just received from the arresting officers.

90. Plaintiff was in handcuffs and surrounded by armed police officers and hospital security staff.

91. There was no reasonable basis to believe that Plaintiff's conduct would injure himself or others.

92. There was no reasonable basis to believe that Plaintiff suffered from a mental illness.

93. The jurat on the petition states "I declare under the penalties of perjury that this petition has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

94. The petition bears the signature of "Alina Harrington" and the address of police headquarters.

95. As a result of the false and misleading petition, hospital personnel administered Katalar (ketamine) and Ativan (Lorazepam) to "chemically restrain" Plaintiff.

96. The administration of these drugs rendered Plaintiff defenseless against the continued physical assaults on his person by medical personnel.

97. Plaintiff was forced to remain at the hospital in the custody of police and hospital staff for approximately eight hours and 25 minutes until he was discharged.

98. Because of the medications given to Plaintiff, he was physically unable to ambulate and leave the hospital.

99. Plaintiff was released from the police station on a personal recognizance bond.

100. Defendants intended to confine Plaintiff at the hospital for their own purposes.

101. Defendants obtaining the assistance of hospital personnel or providing assistance to hospital personnel for the purpose of administering a "chemical restrain" actually caused Plaintiff to be unable to leave.

102. Plaintiff was aware he was being confined and restrained.

103. Plaintiff's confinement was without probable cause to support the need for the arrest or the treatment.

104. The conduct of Defendants on May 15, 2020 caused a violation of Plaintiff's Fourth Amendment right to not be falsely imprisoned except upon the basis of a warrant or probable cause to believe the confinement was necessary.

105. As of May 15, 2020, it was clearly established that imprisonment must be based on a judicially issued warrant or probable cause to believe a crime was committed.

106. As of May 15, 2020, no reasonably trained law enforcement officer would have believed that confining Plaintiff would not be a violation of the United States Constitution.

107. Plaintiff was damaged by the conduct of Defendants in that he suffered unlawful confinement, stress, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in favor of the Plaintiff against Defendants in an amount of not less than $25,000.00 each.

**COUNT 6** - 42 USC § 1983- 4th Amendment-Malicious Prosecution

108. Paragraphs 1 through 107 above are incorporated herein by reference.

109. Defendant Bacigal had no probable cause to submit a warrant request seeking any charges against Plaintiff.

110. Defendant Bacigal falsely stated in his police report that Plaintiff had committed the crime of domestic violence to initiate the arrest.

111. Defendant Bacigal falsely claimed that Plaintiff unlawfully resisted the arrest because the arrest was not lawful.

112. Defendant Bacigal knew that a prosecutor would rely on the false statements in his police report to determine whether probable cause existed to authorize prosecution.

113. Defendant Bacigal's submission of the police report and warrant request was a direct and proximate cause of the authorization of a criminal charge against Plaintiff.

114. Defendant Bacigal's submission of the warrant request was malicious and intentional.

115. Plaintiff was injured to the extent that he had to submit himself to the jurisdiction of the 54-A District Court including arraignment and being placed on pre-trial release with restrictions on his liberty.

116. Plaintiff was injured to the extent that he suffered the anxiety, stress, and worry associated with facing criminal charges carrying a possible period of incarceration and

out-of-pocket expense.

117. As of May 15, 2020, it was clearly established that causing the prosecution of a citizen without probable cause was a violation of the Fourth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution.

118. As of May 15, 2020, no reasonably trained and experienced police officer would have believed it lawful to submit a warrant request under the circumstances presented here.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment for Plaintiff and against Defendant Bacigal in an amount not less than $25,000.00.

<u>**COUNT 7**</u> - 42 USC § 1983- Failure to train and Supervise
[City of Lansing]

119. Paragraphs 1 through 118 above are incorporated herein by reference.

120. The City of Lansing has been on notice of the use of excessive force by its police officers for many years prior to May 15, 2020.

121.

122. At or about the time of the instant offense, March 8, 2013, Defendant City of Lansing was failing to provide proper staffing to the detention facility resulting in excessive shift assignments to the detention staff.

123. Defendant City of Lansing knew or should have known that Defendant Gladstone was assigned to duties that would expose him to situations such as this one involving K.W.

124. The failure to properly train, discipline and supervise Defendant Gladstone led to a violation of K.W.'s Fourth Amendment rights as alleged above.

125. Defendant City of Lansing's failure to properly train these individual defendants in the proper use of force was likely to lead to and did lead to a violation of K.W.'s Fourth

Amendment rights as alleged above.

126. The use of excessive force against K.W. by Defendant Gladstone was pursuant to a policy adopted *de facto* by the Defendant City of Lansing based upon numerous similar events, to wit:

a. On or about June 12, 2010, Lansing Police Officer Matthew Priebe used excessive force in trying to force Mariann Lynn into the back of a police car while she was handcuffed.

b. On or about July 5, 2007, Lansing Police Officer Brian Rendon used excessive force on Michael Gallagher in retaliation for verbal criticism Mr. Gallagher had directed toward Officer Rendon.

c. In approximately March 2013, Lansing Police Officer Aaron Weiber forced an Eastern High School student into a locker by placing his elbow in the student's neck and then punching the student in the face.

d. On or about May 8, 2010, Lansing police officers used excessive force on Gilbert Gonzalez and Rebecca Mora by utilizing a flash bang distraction device before encountering resistance and without reasonable cause to believe resistance was imminent.

e. On or about August 16, 2009,  Lansing Officer Ryan Smith used an electric stun device on Rocky Allred who was handcuffed and not resisting at the time the device was used.

f. On or about October 27, 2007, Lansing Officer Donald Porter used excessive force against Danielle Bell who is a double-amputee by shoving her in the chest and knocking her backwards out of a Capital Area Transportation Authority bus while she was attempting to comply with his order to get off of the bus.

g.  On July 27, 2001, Lansing Officers Walter Kim and Michael Yankowski used excessive force against Leon Smith by shooting Mr. Smith before Mr. Smith created a circumstance reasonably interpreted as a threat of serious physical harm.

h. On March 7, 2005, Lansing Officers Aaron Terrill, Jason Pung, Lorien Williams, Dennis Bunch, Del Kostanko, Kevin Schlage, Beth Larabee, Cedric Ford and Mandi Brunner used excessive force against Martell Coker who had been shot by preventing him from removing himself to an ambulance after having been shot and throwing him into a lawn.

i.  On April 30, 2010, Lansing Officers from the Special Tactics and Response Team (START) used a flash bang device on a residence at 3622 Karen Street before encountering resistance and without reasonable cause to believe resistance was imminent.

j. On or about September 4, 2010, Lansing Police Officers Traviglia, Krimm and Kirkpatrick tackled a suspect, Alan Pinckney, who had fled a traffic stop on foot but was complying with all verbal orders at the time, tackled him with such force that he struck his face on the asphalt, and then deliver fist strikes to his head causing it to bounce on the ground and knee strikes to his legs and body including some strikes that occurred after he was handcuffed.

k. On or about July 5, 2007, Detention Officer David Gladstone grabbed a handcuffed, warrantless detainee by the head and jerked it back while stating "who's the pussy now."

l. Detention Officer Gladstone, in response to a verbal insult, then shoved the prisoner face first into the elevator doors.

m. When the elevator doors opened, Detention Officer Gladstone shoved and drove the prisoner across the elevator and into the back wall of the elevator.

n. Detention Officer Gladstone then used an arm and placed the prisoner in a choke hold causing a near loss of consciousness at or near the end of the elevator ride.

o. A second officer present while Detention Officer Gladstone committed the assault in 2007 was ultimately promoted.

127.  As of May 15, 2020, Defendant City of Lansing was deliberately indifferent to whether a constitutional violation would occur to its citizens as a direct and proximate result of its failure to train its officers in the proper use of force and based on the incidents listed in paragraph 126 above.

128.  As of May 15, 2020, it was clearly established that failure to train officers for performing routine and expected tasks within their job assignments could be considered a deliberate indifference to the constitutional rights of citizens.

129. As of May 15, 2020, it was clearly established that failure to supervise police officers in the performance of their routine duties could be considered a deliberate indifference to the constitutional rights of citizens.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment for Plaintiff and against Defendant City of Lansing in an amount not less than $100,000.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests this Honorable Court:

1.  Enter judgment against each Defendant as specified in the above counts in an amount as awarded by the jury but in no case less than the relief specified in each count;

2.  Award Plaintiff his costs and attorney fees as authorized by 42 U.S.C §1988;

3.  Award Plaintiff his interest on the judgment to the date of the complaint as authorized by law;

4.  Because each individual Defendant's conduct was willful, malicious and intended to inflict monetary loss, humiliation, embarrassment and mental anxiety to Plaintiff, award exemplary damages to Plaintiff in an amount of not less than $100,000.00; and

5.  Award Plaintiff any other relief as equity and justice demand.

Signature by Plaintiff

10-9-2022
Date

Glenn Stewart

Signature by Attorney:

10/9/2022
Date

Brendon G. Basiga P69369
Co-counsel for Plaintiff
909 N. Washington Ave.
Lansing, MI 48906
517-708-7830

## JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

10/9/2022
Date

Brendon G. Basiga P69369
Co-counsel for Plaintiff
909 N. Washington Ave.
Lansing, MI 48906
517-708-7830